IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LINDA ILGENFRITZ, | ) | |
|---|---|---|
| Plaintiff | ) | |
| | ) | CIVIL ACTION NO. 09-1502 |
| v. | ) | |
| | ) | |
| HONORABLE ROBERT GATES, | ) | |
| Secretary of the Department of Defense, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge

I.  **Introduction**

Pending before the court is a motion to dismiss (the "Motion") (Docket No. 4) filed by defendant Robert E. Gates, Secretary, United States Department of Defense ("defendant" or "DOD"). The motion seeks to dismiss the complaint (the "Complaint") filed by plaintiff Linda Ilgenfritz ("plaintiff" or "Ilgenfritz"), a former employee of the DOD's Defense Contract Management Agency ("DCMA" or the "agency") located in Pittsburgh, Pennsylvania. Plaintiff alleges that the DCMA discriminated against her based upon her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. Plaintiff claims, under a theory of constructive discharge, that the DCMA forced her to resign her position by changing her compressed work schedule ("CWS") and withdrawing her authorization to telework at home two days a week. Plaintiff seeks back pay, front pay or reinstatement, and compensatory damages. Because this court lacks subject-matter jurisdiction over the case, the Motion will be granted.

## II. Factual Background

Plaintiff is an approximately sixty-year-old former procurement technician with the DCMA's regional office in Pittsburgh, Pennsylvania. (Compl. ¶¶ 7, 9, 10.) (Docket No. 1.) Prior to April 2009, plaintiff worked ten hours each day from Monday through Thursday. (Id. ¶ 11.) She also teleworked two days of each work week. (Id.) In early 2009, plaintiff asked her immediate supervisor if it would be possible for her to telework an additional day each week. (Id. ¶ 14.) Plaintiff was informed that her request was approved, but that she was being assigned management support office ("MSO") duties in addition to her regular duties which could be performed at home. (Id. ¶ 15.)

On March 23, 2009, plaintiff was advised by e-mail that her CWS and telework days were being suspended effective in the immediate future. (Id. ¶ 16.) Plaintiff inquired about the reason for the change and was told that the MSO duties required her daily presence at the office and that "Colonel Anderson and Kathy Lehman did not approve of CWS and wanted the practice discontinued throughout the Ohio River Valley region." (Id. ¶ 17.)

By an e-mail dated April 24, 2009, plaintiff learned that CWS was cancelled for all employees of the Pittsburgh office, and that telework requests would have to be resubmitted. (Id. ¶ 18.) By an e-mail dated May 1, 2009, the April 24, 2009 e-mail was rescinded for all employees but plaintiff. (Id.) At approximately the same time plaintiff learned that the DCMA Pittsburgh office would be relocating from Oakland, Pennsylvania to downtown Pittsburgh in late July 2009. (Id. ¶ 19.) Defendant refused to consider reinstating plaintiff's CWS and telework agreement. (Id. ¶ 21.) At the time plaintiff's CWS and telework option were cancelled, numerous employees who are substantially younger than plaintiff were permitted to continue on

2

CWS and to telework. (Id. ¶ 22.) Plaintiff alleges that defendant's actions caused her to be constructively discharged effective July 31, 2009. (Id. ¶ 27.)

Plaintiff does not dispute the following facts set forth in the Motion. Plaintiff was a bargaining unit employee covered by a collective bargaining agreement ("CBA") between the DCMA and the American Federation of Government Employees, DCMA Council 170 ("AFGE" or the "union"). (Mot. ¶ 7) The CBA provides that an aggrieved employee who alleges discrimination may raise the matter under the statutory procedure - an Equal Employment Opportunity ("EEO") complaint - or under the negotiated grievance procedure, but not both. (Id.) The CBA provides for arbitration in the event that a grievance remains unresolved in the grievance process. (Id.)

On April 7, 2009, plaintiff sent an e-mail message to the DCMA's EEO officer, Kim Appleton, regarding the changes to plaintiff's work schedule expressing concern of possible discrimination based upon her age. (Id. ¶ 9) Appleton called plaintiff and discussed administrative remedies with plaintiff including the EEO process, union grievance procedures, and the DCMA Ombudsman program. (Id.) Plaintiff indicated she was going to send a letter to the union and did not want to pursue an EEO complaint at that time. (Id.) On the same day, plaintiff sent an e-mail message to the union president, Stephen Katchur ("Katchur"), regarding her changed work schedule. (Id. ¶ 10. ) In the e-mail plaintiff informed Katchur that she wished to file a grievance against the DCMA. (Id.)

On April 22, 2009, the union asked the DCMA to provide written justification for the changes in plaintiff's telework and work schedules. (Id. ¶ 11.) On May 6, 2009, the agency

responded to the union's request for information indicating it was necessary to change plaintiff's work schedule because of the addition of MSO duties to plaintiff's job. (Id.)

On May 29, 2009, the union filed a step 1 grievance on plaintiff's behalf. In the grievance the union advised that the subject matters of the grievance were the changes made to plaintiff's work and telework schedules, but that discrimination was not an issue in the grievance. (Id. ¶ 12.) On June 26, 2009, the agency denied the step 1 grievance explaining that the addition of MSO duties to plaintiff's work assignment required her presence in the office on a daily basis. (Id. ¶ 13. ) On July 22, 2009, the union filed a timely step 2 grievance related to plaintiff's work schedule and telework option and stated that discrimination based on race, color, religion, age, sex, or national origin was not an issue in the grievance. (Id. ¶ 15.)

On August 2, 2009, plaintiff announced her retirement, effective July 31, 2009, in an e-mail sent to her DCMA team members. (Id. ¶ 16.) The next day plaintiff sent notice of her retirement to her supervisor. (Id.) On August 7, 2009, plaintiff's step 2 grievance was denied as moot. (Id. ¶ 17.) The union did not advance the grievance to arbitration. (Id. ¶ 18.) Neither plaintiff nor the union amended the grievance to add discrimination as an issue. (Id.) Plaintiff did not appeal the step 2 grievance decision to the Equal Employment Opportunity Commission ("EEOC"). (Id.) On August 11, 2009, plaintiff's attorney notified the DCMA's EEO office of plaintiff's desire to begin EEO counseling on a claim of forced retirement due to age discrimination and hostile work environment. (Id. ¶ 19.) On September 2, 2009, the DCMA's EEO counselor interviewed plaintiff's counsel. (Id. ¶ 20.)

On September 14, 2009, the DCMA's EEO office notified plaintiff's counsel that plaintiff's EEO counseling was completed and she could file a formal complaint of

4

discrimination. (Id. ¶ 21.) The EEO office advised plaintiff that a formal complaint of discrimination must disclose whether the employee also filed a grievance under a negotiated procedure on the same claims. (Id.) On September 19, 2009, plaintiff filed a formal EEO complaint citing age discrimination, reprisal/hostile work environment, and forced retirement. (Id. ¶ 22.)

By letter dated October 13, 2009, the EEO office dismissed plaintiff's EEO complaint on the basis that plaintiff first elected to raise the matter of her changed work schedule under the negotiated grievance procedure and plaintiff's formal EEO complaint involved the same agency action as the union grievance. (Id. ¶ 23; Compl., Ex. 1.) The letter notified plaintiff that it constituted the "Final Agency Decision" on the matter of plaintiff's EEO complaint. (Id.) On October 16, 2009, plaintiff's attorney objected to the agency's final decision, arguing that the election of remedies rule should not apply where the grievance did not include the issue of discrimination. (Mot. ¶ 24.) On October 23, 2009, the agency responded explaining that the election of remedies applies irrespective of whether or not the issue of discrimination was specifically raised in the negotiated grievance process. (Id.)

On November 10, 2009, plaintiff filed the instant action alleging she exhausted her administrative remedies through the statutory EEO process. (Compl. ¶ 27.) Plaintiff did not indicate in the Complaint that she previously filed a grievance under the CBA negotiated procedure. On January 8, 2010, defendant filed the Motion and brief in support. (Docket No. 5). In the Motion defendant noted that the court would need to consider the negotiated procedure undertaking, which was a matter outside of the Complaint. On January 18, 2010, plaintiff filed a response to the Motion (Docket No. 6) and brief in support. (Docket No. 7.)

On June 8, 2010, the court held a hearing at which the parties argued their respective positions with respect to the Motion. As an initial matter at the hearing, the court noted that there is an unsettled question about whether a failure to exhaust administrative remedies affects subject-matter jurisdiction or whether it is in the nature of an affirmative defense. If it is an affirmative defense the court would need to consider the Motion to be a motion for summary judgment. Plaintiff and defendant agreed that the issue raised implicated subject-matter jurisdiction. The parties confirmed that there was not a dispute with respect to the underlying facts and agreed that the court had before it all the material it would need to resolve the dispute if it were a summary judgment motion.

### III. Legal Standards

As a threshold matter, the court needs to determine the appropriate standard to apply - should the motion be considered under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. The failure to exhaust administrative remedies commonly is raised as an affirmative defense in the nature of statute of limitations and subject to a motion to dismiss under Rule 12(b)(6). Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997); Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). Motions under Rule 12(b)(6) are typically filed when the administrative exhaustion dispute involves a matter of timeliness. Robinson, 107 F.3d at 1022. ("Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim."). Under circumstances where it is clear from the face of the pleadings that administrative remedies have not been exhausted, a motion to dismiss on jurisdictional grounds is appropriate under Rule 12(b)(1). Id. ("A district court may rule on a Rule 12(b)(1) motion when on the face of the pleadings it is clear that administrative remedies

have not been exhausted.").[1] The Court of Appeals for the Fourth Circuit in Jones v. Calvert Grp., Ltd., 551 F. 3d 297 (4th Cir. 2009), commented about whether failure to exhaust claims should be treated as a matter of subject-matter jurisdiction or as an affirmative defense. The court of appeals stated:

> Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. See *Davis v. North Carolina Dep't of Corr.*, 4 F.3d 134, 138-40 (4th Cir. 1995)

---

[1] In Robinson, the Court of Appeals for the Third Circuit was concerned whether it should have treated a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. The court of appeals stated:

> It follows that the Navy's motion to dismiss should have been treated under Rule 12(b)(6), the Rule invoked by the Navy rather than converted into a rule 12(b)(1) motion for lack of jurisdiction, as the district court did. Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim. As we explained in *Hornsby* [*v. United States Postal Service*, 787 F.2d 87 (3d Cir. 1986)], "[t]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [ ] for conciliation or resolution." [*Hornsby*] 787 F.2d at 90. A district court may rule on a Rule 12(b)(1) motion when on the face of the pleading it is clear that administrative remedies have not been exhausted, but this rule is "inapplicable to the resolution of disputed issues of material fact with respect to the applicability of statutes of limitations." *Id.* at 89.

Robinson, 107 F.3d at 1022.

> (holding that removal of the Title VII action was improper because plaintiff's failure to exhaust administrative remedies deprived the federal courts of subject matter jurisdiction). The same is true of claims made under the ADEA. See 29 U.S.C.A. § 626(d); *Vance v. Whirlpool Corp.*, 707 F.2d 483 486-89 (4th Cir. 1983) (holding that plaintiff's failure to wait 60 days after filing federal administrative charge before bringing suit in federal district court deprived district court of subject matter jurisdiction).

Jones, 551 F.3d at 300-01.

In Van Houten v. Gober, No. Civ. A. 98-270, 1998 WL 966021 (E.D. Pa. Nov. 10, 1998), the district court determined that exhaustion is not a matter of subject-matter jurisdiction; rather it is a matter for either a Rule 12(b)(6) motion or a motion for summary judgment. The court stated:

> The defendant moved to dismiss Van Houten's complaints on the grounds this Court lacks jurisdiction over the subject matter of his claims. Fed.R.Civ.P. 12(b)(1). The question presented here, whether Van Houten has appropriately exhausted his administrative remedies and thus, may turn to the courts for de novo review of his discrimination claims, however, is not a jurisdictional question. *See Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir. 1997) (holding that district court should have evaluated motion to dismiss Title VII claims for failure to exhaust administrative remedies under Rule 12(b)(6) rather than Rule 12(b)(1)). Rather, questions of exhaustion of administrative remedies "are in the nature of statutes of limitation. They do not affect the district court's jurisdiction." *Id.* (quoting *Hornsby v. United States Postal Serv.*, 787 F.2d 87, 89 (3d Cir. 1986)). Because courts are permitted, in some narrow circumstances, to examine equitable criteria to determine whether to require administrative exhaustion, the failure to exhaust cannot be considered a jurisdictional prerequisite. *See Id.* at 1021-22. Therefore, this court should treat the government's motion to dismiss as a motion under Rule 12(b)(6) and should evaluate whether Van Houten has satisfied "the precondition to suit specified by Title VII" and the Rehabilitation Act - exhaustion of his administrative remedies. *Id.* at 1022 (citing *Hornsby*, 787 F.2d at 90). Because both the government and Van Houten presented

> "matters outside the pleadings' to the court, the motion should
> actually be treated as one for summary judgment under Rule 56.
> Fed.R.Civ.P 12(c); *Robinson,* 107 F.3d at 1022.

Van Houten, 1998 WL 966021, at *2.

Whether Robinson stands for the proposition that the court in Van Houten stated is problematic because Robinson raised concerns about timeliness issues. In Hause v. United States of America, Civ. A. No. 09-2450, 2010 WL 1718439, at **1-2 (3d Cir. Apr. 29, 2010), in a nonprecedential opinion, the Court of Appeals for the Third Circuit addressed an appeal of a dismissal of a suit for lack of subject-matter jurisdiction. In Hause, the district court found that the plaintiff failed to exhaust his administrative remedies as required by the Federal Torts Claims Act. The court treated the issue under the applicable standard for subject-matter jurisdiction, noting that the standard for review of subject-matter jurisdiction is plenary. The court of appeals did not discuss whether issues relating to exhaustion should have been addressed under Rule 12(b)(6) or Rule 56(c) standards.

There is no precedent directly on point that addresses whether the issue presented here should be treated as a matter of subject-matter jurisdiction or as a matter of summary judgment under Rule 56. Because the court has to consider matters outside the Complaint, and the parties agree that there is no dispute about the applicable facts, this court considers the difference in the context of this case to be a matter without a distinction. The parties agreed that the issue implicates subject-matter jurisdiction and the court will apply the Rule 12(b)(1) standards.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss the matter if it lacks subject-matter jurisdiction over the Complaint. FED. R. CIV. P. 12(b)(1). Challenges to subject- matter jurisdiction under Rule 12(b)(1) may be facial or factual in form.

Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge attacks the complaint on its face and requires the court to consider only the complaint's allegations and to do so in the light most favorable to the plaintiff. Mortensen, 549 F.2d at 891. A factual challenge contests the existence of subject-matter jurisdiction, apart from any pleadings. Id. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist. Id. In a factual challenge, the plaintiff has the burden of persuasion to show that jurisdiction exists. Id.; Gould, 220 F.3d at 178. The Motion raises a factual challenge, which requires the court to consider evidence outside the Complaint.

## IV. Discussion

### A. Statutory Background

Under the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101 et seq., a federal employee, who believes he or she has been discriminated against and whose CBA provides for a negotiated grievance procedure addressing discrimination claims, can elect to file either a grievance under the CBA or an EEO complaint, **but not both**. 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a). The election of remedies doctrine is codified in 5 U.S.C. § 7121(d), which provides:

> (d) An aggrieved employee affected by a prohibited personnel practice under section 2302 (b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise **the matter** under a statutory procedure or the negotiated procedure, **but not both**. An employee shall be deemed to have exercised his option under this subsection to

> raise **the matter** under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

5 U.S.C. § 7121(d) (emphasis added). The same remedy is reflected in 29 C.F.R. § 1614.301(a), which provides:

> (a) When a person is employed by an agency subject to 5 U.S.C. § 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on **a matter of alleged employment discrimination** must elect to raise **the matter** under either part 1614 or the negotiated grievance procedure, **but not both**. An election to proceed under this part is indicated only by the filing of a written complaint; use of the pre-complaint process as described in §1614.105 does not constitute an election for purposes of this section. An aggrieved employee who files a complaint under this part may not thereafter file a grievance on **the same matter**. An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint **on the same matter** under

> this part 1614 **irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination**. Any such complaint filed after a grievance has been filed **on the same matter** shall be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure including the right to appeal to the Commission from a final decision as provided in subpart D of this part. The dismissal of such a complaint shall advise the complainant of the obligation to raise discrimination in the grievance process and of the right to appeal the final grievance decision to the Commission.

29 C.F.R. § 1614.301(a)(emphasis added).

"The employee is deemed to have elected to pursue a union grievance procedure when she timely files a grievance in writing in accordance with the negotiated grievance procedure." Frasure v. Principi, 367 F. Supp.2d 245, 253 (D. Conn. 2005) (citing 5 U.S.C. § 7121(d)). "If an employee files a timely written grievance before filing a written EEO complaint, he has irrevocably chosen the negotiated grievance procedure, and is precluded from filing an EEO complaint on the same matter." Rosell v. Wood, 357 F. Supp.2d 123, 128 (D. D.C. 2004) (citing Am. Fed'n of Gov't Employees, Local 2052 v. Reno, 992 F.2d 331, 332 (D.C. Cir. 1993); Johnson v. Peterson, 996 F.2d 397, 399 (D.C. Cir. 1993)). The election is irrevocable regardless whether the agency informed the employee of the need to make an election of remedies and irrespective whether the issue of discrimination was actually raised in the grievance process. 29 C.F.R. § 1614.301(a). A judicial review is available only after the employee has exhausted administrative remedies specifically established through the union's grievance procedures. Rosell, 357 F. Supp. 2d at 129 (citing Johnson, 996 F.2d at 401).

B.     **The Same Matter**

1.     General Framework

Here, there is no factual issue in dispute. The dispositive issue before the court is a matter of law, i.e., whether plaintiff's grievance and Complaint concern the "same matter." The court in Rosell considered similar circumstances. The court opined:

> The term "matter" in 5 U.S.C. § 7121(d) and 29 C.F.R. § 1614.301(a) has been interpreted to refer to the "underlying [government] action" that gives rise to the grievance or complaint. *Bonner v. Merit Systems Protection Board,* 781 F.2d 202, 204 (Fed. Cir.1986); *Macy v. Dalton,* 853 F. Supp. 350, 353 (E.D. Ca.1994) (noting that "the 'matter' to which § 7121(d) refers is not plaintiffs' discrimination claim, but rather" the underlying government action giving rise to the claim.) In *Guerra v. Cuomo,* 176 F.3d 547, 550 (D.C. Cir.1999), the D.C. Circuit referred to the following test for determining if an employee has raised the same matter in a grievance and EEO complaint: "If [the employee] raised a topic in both documents, or if the arbitrators assigned to handle the grievance would necessarily have needed to inquire into a topic in discharging their duties, then § 7121(d) bars [the employee] from raising that same topic in [the employee's] subsequent EEO complaint." (quoting *Facha v. Cisneros,* 914 F. Supp. 1142, 1149 (E.D. Pa.1996)).

Rosell, 357 F.Supp.2d at 129-30.

In Van Houten, the district court commented:

> The term "matter," as used in 5 U.S.C. § 7121(d), means the underlying employment action. *See Bonner v. Merit Systems Protection Bd.,* 781 F.2d 202, 205 (Fed.Cir.1986) (interpreting legislative history of the Civil Service Reform Act); *Facha v. Cisneros,* 914 F.Supp. 1142, 1148 (E.D.Pa.1996); *Macy v. Dalton,* 853 F.Supp. 350, 353 (E.D.Cal.1994). Two complaints refer to the same "matter" if the disputed personnel action at the root of the employee's complaint is the same, regardless of the legal theory on which the action is challenged. *See* 29 C.F.R. § 1614.301(a) (employee who filed a grievance "may not thereafter file a

13

> complaint on the same matter ... irrespective ... of whether the grievance has raised an issue of discrimination"); *Facha,* 914 F.Supp. at 1148 (legal basis of claims concerning the same underlying action are irrelevant).

Van Houten, 1998 WL 966021, at *5; see Gill v. Summers, No. Civ. A. No. 00-CV-5181, 2001 WL 283150, at *3 (E.D. Pa Mar. 20, 2001) ("'Matter' under § 7121(d) has a very broad scope referring to the underlying employment actions at issue in the dispute.. . . If the employee attempts to file a complaint with the EEOC raising a matter that was alleged in a negotiated grievance procedure, the EEOC must dismiss the complaint.") (quoting Bonner, 781 F.2d at 204-05; Facha, 914 F. Supp. at 1148 and citing 29 C.F.R. § 1614.301(a) (2001)); see also Macy v. Dalton, 853 F. Supp. 350, 353 (E.D. Ca. 1994) ("the word 'matter,' as used in 5 U.S.C. § 7121, refers to the 'underlying [employment] action,'. . . not plaintiffs' discrimination claim") (quoting Bonner, 781 F.2d at 205).

In Facha v. Cisneros, 914 F. Supp. 1142 (E.D. Pa.1996), the district court considered whether a plaintiff's hostile work environment claims in her EEO complaint involved the same matter as those raised in her union grievance. Id. at 1149. The plaintiff in that case alleged, among other things, that her work environment was more difficult for women than men based upon two types of comments - those related to sex and those related to poor work performance. Id. The court held that the plaintiff could raise her hostile work environment claim based upon the sex-related comments in her EEO complaint because the arbitrators assigned to her grievance would not need to verify the occurrence of the sex-based comments. Id. In contrast, however, the court held that the plaintiff could not raise her hostile work environment claim based upon poor work performance in her EEO complaint because arbitrators assigned to her grievance

14

would need to determine the truth of the comments concerning the plaintiff's work performance. Id. The court stated:

> Paragraph 21 of Facha's EEO complaint describes two incidents in which Facha's superiors allegedly made derogatory comments to two female office workers regarding their sex. Paragraphs 22 and 23 describe comments disparaging Facha's work performance, but these comments are not explicitly sexual in nature. The arbitrators assigned to resolve Facha's grievance would have no need to verify whether the explicitly sex-based comments occurred. They would, however, need to determine the truth of the comments concerning Facha's work performance. Thus, the grievance bars the latter comments, but not the former.

Id.

### 2. Application to this case

After plaintiff's step 1 grievance was denied she continued the negotiated procedure and filed a step 2 grievance, which was denied as moot due to plaintiff's decision to retire. Plaintiff could have amended her union grievance, at any time, to include her age discrimination claim, but did not do so. See Rosell, 357 F. Supp.2d at 131 (recognizing a union member's right to amend a grievance to include discrimination claim). Plaintiff could have appealed the agency's final decision to the EEOC. See 29 C.F.R. § 1614.401(d); Dep't of the Air Force, 436th Airlift Wing v. FLRA, 316 F.3d 280, 283 (D.C. Cir. 2003) ("the EEOC has final review authority over any decision resulting from the grievance procedure involving discrimination within the EEOC's jurisdiction."). Once notified the step 2 grievance was moot, rather than appealing that decision or amending her grievance, plaintiff went to the EEO and commenced the statutory process.

Plaintiff's Complaint is before this court through the EEO process rather than through the grievance process.

Defendant contends plaintiff's prior election to challenge the cancellation of her CWS and telework through a grievance bars her from pursuing her constructive discharge claim outside the procedures established by the CBA because her EEO complaint involves the same agency action underlying plaintiff's union grievances. In essence, defendant claims that plaintiff failed to exhaust her administrative remedies because she did not pursue all the necessary steps through the grievance procedure to come to court.

Plaintiff attempts to distinguish her instant claim as one for constructive discharge. Plaintiff contends the sole claim in this action is for constructive discharge which was not a part of the underlying grievance. Plaintiff argues that because the instant action does not include disparate treatment claims or seek any remedy concerning the grievance decisions, the constructive discharge is a separate matter for which plaintiff is entitled to make a new election of remedies. Plaintiff argued at the hearing that, unlike her grievance, her action for constructive discharge is based upon the DCMA's failure to accommodate her in her ability to continue working for the DCMA after the beginning of July 2009 when they reassigned plaintiff to downtown Pittsburgh. Plaintiff contended that there was a reorganization going on within the Pittsburgh region. Plaintiff argued that the record indicates that defendant was accommodating younger employees with work assignments in the reorganized region, while defendant was not making an effort to accommodate plaintiff's work assignments. Plaintiff asserted that her grievance was not based upon an adverse employment action and that the instant case involves the issue of a hostile work environment that would not implicate plaintiff's CWS and telework

option.[2] Plaintiff, however, concedes the CWS and telework issues were the subject of the grievance and are being asserted as items contributing to her constructive discharge claim. Plaintiff does not dispute that she was employed by an agency covered by 5 U.S.C. § 7121(d) and that the agency's CBA permitted discrimination claims to be asserted in a grievance. Plaintiff does not dispute that she filed a grievance concerning the cancellation of her CWS and telework option, which would preclude her from filing an EEO complaint if those matters were the underlying government action that gave rise to the claim.

Plaintiff relies upon Van Houten and Facha. Unlike the situations in Van Houten and Facha, the disposition of Ingelfritz's constructive discharge claim cannot be resolved without determining the veracity of the stated reason for the government's action in changing her CWS and withdrawing her telework option. To the contrary of plaintiff's arguments concerning the reorganization, plaintiff's discrimination claim relies upon and is inextricably intertwined with the same underlying government actions related to her CWS and telework option. Constructive discharge is plaintiff's theory of her case. The government actions referred to in the Complaint that caused plaintiff's alleged constructive discharge are the same actions that were raised in the grievance. Under those circumstances, the court is constrained to conclude that the matter

---

[2] Plaintiff averred at the hearing that her option to amend the grievance was no longer available because the union had indicated that plaintiff's decision to file for retirement precluded the continuance of step 2 of the grievance process. Plaintiff concludes that since only the union could sign off on a grievance, her only option was to file a complaint with the EEO. Defendant contends that plaintiff's argument that she had no opportunity to amend or to grieve her Complaint on the basis that the union would not do so is not supported in the record. Defendant claims that plaintiff's remedy at that juncture was to go the EEOC to get her claim reinstated to allow her to amend her grievance by adding any additional claims.

involved in this case is the same matter involved in the grievance and that plaintiff is precluded from proceeding via an EEO complaint.

V.      **Conclusion**

Plaintiff's grievance and Complaint concern the same matter.  The grievance and the EEO complaint - the basis of the instant case - refer to the employment action being the changes in plaintiff's conditions of employment, i.e., the DCMA's elimination of her CWS and telework option.  Plaintiff does not dispute she filed a grievance based upon her CWS and denial of her ability to continue her telework from her home.  Plaintiff elected to challenge those claims through the grievance process and not through an EEO complaint.  Plaintiff's decision to file her grievance first committed her to resolving her discrimination claim through the grievance process, rather than through the EEO framework, before filing an appeal with this court.  Accordingly, as this case is based upon an EEO complaint, which plaintiff was precluded by law from filing, this court lacks jurisdiction over the claims raised in the Complaint.

Therefore, defendant's motion to dismiss is GRANTED.  Plaintiff's Complaint is dismissed.  The dismissal of her Complaint is based upon lack of jurisdiction and not on the merits.  Thus, the dismissal will not preclude plaintiff from seeking to exhaust her administrative remedies in the grievance process.

Date: July 26, 2010                                                                  By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge